# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ~~____________________~~ 1:26-cv-04837-NRN

GENE HOFFMAN and
FIREARMS POLICY COALITION, INC.,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
ARMANDO SALDATE III, in his official capacity as Director of the Colorado Bureau of Investigation;
COLONEL MATTHEW C. PACKARD, in his official capacity as Chief of the Colorado State Patrol;
JOHN WALSH, in his official capacity as District Attorney for the City and County of Denver, Colorado;
RON THOMAS, in his official capacity as Chief of Police for the Denver Police Department; and
ELIAS DIGGINS, in his official capacity as Sheriff of Denver,

*Defendants*.

---

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**

---

Plaintiffs GENE HOFFMAN and FIREARMS POLICY COALITION, INC. (collectively, "Plaintiffs"), by and through counsel of record, bring this Complaint against Defendants, the CITY AND COUNTY OF DENVER, COLORADO ("Denver") and officials of the State of Colorado and Denver responsible for enforcing laws infringing the right of law-abiding, peaceable citizens to keep and bear arms for self-defense and other lawful purposes, and allege as follows:

## INTRODUCTION

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under that provision, which is incorporated against the states through the Fourteenth Amendment, *McDonald v. City of Chicago*,

561 U.S. 742, 749–50 (2010), individuals have the constitutionally protected right to possess a handgun in the home for self-defense, *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and to carry a handgun for self-defense outside the home, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022).

2. Despite the constitutional protection of the right to keep and bear arms, Colorado and Denver have adopted provisions that, together, deny an entire class of peaceable and otherwise-qualified citizens—including Plaintiff Hoffman and Plaintiff Firearms Policy Coalition's members—the ability to lawfully carry a handgun in public within Denver city and county limits.

3. Colorado limits concealed carry by (1) restricting the issuance of concealed-carry permits to in-state residents and (2) recognizing permits issued by a nonresident's home state only if that state also recognizes Colorado permits. Although Colorado generally permits open carry for residents and nonresidents alike, Denver flatly prohibits open carry within city and county limits.

4. As a result, nonresidents from states that do not recognize Colorado's concealed-carry permits have no lawful means to carry a handgun in Denver. Or put another way, for an entire class of law-abiding citizens wishing to exercise their constitutionally protected right to carry a handgun in public for self-defense, Denver is a gun-free zone.

5. The Supreme Court's decision in *Bruen* holds that the Second Amendment protects the right to carry arms in public and squarely forecloses the result reached by Colorado and Denver's scheme. And if more were needed, nothing in this Nation's history or tradition supports stripping citizens of their right to carry based on where they live. Simply put, citizens do not surrender their constitutionally protected right to bear arms when they cross state lines—the Second Amendment, like every guarantee in the Bill of Rights, "has the same meaning in all parts

of the United States." *Wolford v. Lopez*, 609 U.S. 185, 206 (2026). Because the provisions challenged here rest on a different premise—that nonresidents have no constitutional right to carry a handgun for self-defense while in Denver—they violate the Second and Fourteenth Amendments.

6. Separately, Colorado's denial of concealed-carry permits to nonresidents, along with the associated benefits and privileges conferred by such permits, violates these same provisions, as well as the Privileges and Immunities Clause of Article IV.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8. Plaintiffs seek relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988.

9. Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

### Plaintiffs

10. Plaintiff Gene Hoffman is a natural person; a resident of Emerald Hills, California; an adult over the age of 21; a citizen of the United States; a member of the Firearms Policy Coalition, Inc.; and a person legally eligible under federal and state law to possess and acquire firearms. Plaintiff Hoffman regularly travels to and through Denver, Colorado, and would carry a handgun there for lawful self-defense but for the challenged laws.

11. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, with members across the country. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic

freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. Protecting the right to carry for nonresidents is especially important to FPC and its mission, and FPC has litigated to secure that right in California, New York, and Louisiana. FPC brings this action on behalf of its members, including Hoffman, who are adversely and directly harmed by Defendants' enforcement of the challenged laws.

**Defendants**

12. Defendant the City and County of Denver is "a single body politic and corporate" that "may sue and defend, plead and be pleaded, in all courts and places." COLO. CONST. art. XX, § 1. It is vested with all "powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control . . . [t]he imposition, enforcement and collection of fines and penalties for the violation of any of the provisions of [its] charter, or of any ordinance adopted in pursuance of the charter." *Id.* § 6. Denver has exercised that power to enact and enforce its unconstitutional carry regime.

13. Defendant Armando Saldate III is sued in his official capacity as Director of the Colorado Bureau of Investigation ("CBI"). As Director of the CBI, Defendant Saldate is "the chief administrative officer of the bureau and [] also . . . an agent." COLO. REV. STAT. § 24-33.5-404. He is tasked with "supervis[ing] and direct[ing] the administration and all other activities of the bureau." *Id*. All agents of the CBI, including the Director, are vested with the powers of peace officers of the state and have all the powers of any sheriff or police or other peace officer. *Id.*

§ 24-33.5-409. All agents of the CBI are tasked with "perform[ing] duties in the investigation, detection, and prevention of crime and the enforcement of the criminal laws of" Colorado, including the state's concealed-carry laws. *Id.*

14. Defendant Colonel Matthew C. Packard is sued in his official capacity as Chief of the Colorado State Patrol. As Chief of the Colorado State Patrol, Defendant Packard is "the executive head and senior administrative officer of the Colorado state patrol" charged with "supervis[ing] and direct[ing] the administration [of] all activities of the Colorado state patrol." *Id.* § 24-33.5-205. All officers of the State Patrol have the power to make arrests for violations of any Colorado criminal law, including the state's concealed-carry laws. *Id.* § 24-33.5-212(1)(a)(I).

15. Defendant John Walsh is sued in his official capacity as District Attorney for the City and County of Denver, Colorado, the State's 2nd Judicial District. As District Attorney, Defendant Walsh is charged with "appear[ing] in behalf of the state and the several counties of his . . . district" "[i]n all indictments, actions, and proceedings" to which the state or county may be a party, *id.* § 20-1-102(1), including actions to enforce the carry restrictions at issue here.

16. Defendant Ron Thomas is sued in his official capacity as Chief of Police for the Denver Police Department. The Denver Police Department enforces state laws and local ordinances, including the carry restrictions at issue here.

17. Defendant Elias Diggins is sued in his official capacity as Sheriff of Denver. The Denver Sheriff Department enforces state laws and local ordinances, including the carry restrictions at issue here. State law also charges each sheriff with "implement[ing] and administer[ing]" the concealed-carry permitting process. *Id.* § 18-12-201(3).

## FACTUAL ALLEGATIONS

### I. DENVER AND COLORADO'S UNCONSTITUTIONAL CARRY REGIME

18. Colorado state law requires that a person be "a legal resident of . . . Colorado" in order to obtain a concealed-carry permit from the state. COLO. REV. STAT. § 18-12-203(1)(a).

19. Colorado will not recognize as valid a concealed-carry permit issued by another state unless that state "recognizes the validity of permits issued" by Colorado. *Id.* § 18-12-213(1). Such bilateral recognition is called "reciprocity."

20. Colorado has reciprocity with 34 states. *See* Concealed Handgun Permit (CHP) Reciprocity, COLO. BUREAU OF INVESTIGATION, https://perma.cc/4YYV-PEGM.

21. Colorado lacks reciprocity with 15 states and the District of Columbia. Those states are California, Connecticut, Hawaii, Illinois, Maine, Maryland, Massachusetts, Nevada, New Jersey, New York, Oregon, Rhode Island, South Carolina, Vermont, and Washington. *Id.*

22. When Colorado recognizes permits issued by another state, it does so only for permits "issued to a person who is . . . [a] resident of the state that issued the permit." COLO. REV. STAT. § 18-12-213(1)(b)(I). Colorado will thus not recognize permits held by nonresidents that were issued by other states.

23. Under Colorado state law, "[a] person commits a class 1 misdemeanor if the person knowingly and unlawfully . . . [c]arries a firearm concealed on or about his person" without a valid permit. *Id.* § 18-12-105(1)(b), (2)(c).

24. Despite its restrictions on concealed carry, Colorado state law generally permits open carry.

25. Denver, however, makes it "unlawful for any person to openly wear, carry, or transport any weapon on or about their person or vehicle." Denv., Colo., Rev. Mun. Code ch. 38, art. IV, div. 2, § 38-118(b).

26. Denver also makes it "unlawful for any person to wear, carry, or transport any weapon concealed on or about their person" unless "the person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law." *Id.* § 38-118(a), (d).

27. A person who violates these provisions is subject to a fine and forfeiture of the firearm. *Id.* §§ 38-128(a), 38-129(a)–(b).

28. Accordingly, an ordinary, law-abiding citizen cannot carry a handgun in public while in Denver unless he holds a valid concealed-carry permit.

29. Nonresidents of Colorado whose home states lack reciprocity with Colorado cannot obtain a valid concealed-carry permit for purposes of Colorado law and thus have no lawful means of carrying a handgun in public while in Denver.

30. Furthermore, the inability of a nonresident of Colorado to acquire a permit from Colorado restricts carry even outside of Denver. The federal Gun Free School Zones Act bars carrying a firearm within 1,000 feet of a school. *See* 18 U.S.C. § 922(q)(2)(A)–(B). It exempts only individuals who are "licensed [to carry a firearm] by the State in which the school zone is located . . . [if] the law of the State or political subdivision requires that, before an individual obtains a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license." *Id.* § 922(q)(2)(B)(ii). Given the myriad "school zones" throughout Colorado that fall within this definition, the Gun Free School Zone Act creates a patchwork whereby anyone carrying a firearm without a permit and going about

a typical day around town "could be a criminal at least six times over" before they get to their destination. *Wolford*, 609 U.S. at 204.

31. Moreover, persons who hold a valid concealed-carry permit enjoy certain privileges under state law, including but not limited to the ability to possess a handgun in their vehicles on public university campuses and the ability to carry in the adjacent parking area of certain government buildings. COLO. REV. STAT. §§ 18-12-105.3(2)(e), 18-12-105.5(3)(d.5)(II).

32. As such, to avoid the deprivation of their Second Amendment protected rights caused by the confluence of these restrictions, Plaintiff Hoffman and similarly situated individuals, including Plaintiff FPC's members, must be permitted to apply for and acquire, on the same terms as a Colorado resident, a Colorado concealed-carry license.

## II. THE CARRY REGIME'S EFFECT ON PLAINTIFFS

33. Plaintiff Hoffman is a law-abiding, responsible, adult resident of Emerald Hills, California. Plaintiff Hoffman owns a handgun and holds active concealed-carry permits from the states of California, Utah, Arizona, and Florida. When he travels out of state, he typically brings a handgun with him and carries it in public where permitted by federal, state, and local law.

34. Plaintiff Hoffman travels to Denver at least two or three times per year to visit friends as well as his son, who is enrolled at Colorado State University. During these trips, he spends time in public areas and establishments within Denver city and county limits. He has plans to return to Denver in January 2027.

35. Because of the challenged Denver and Colorado laws and Defendants' enforcement thereof, Plaintiff Hoffman does not and cannot carry his handgun while in public in Denver. If it were lawful for him to publicly carry a handgun (either open or concealed) in Denver, Plaintiff

Hoffman would do so. If he could obtain a valid concealed-carry permit, he would also possess a firearm in his car while in the parking area of Colorado State University as permitted by state law.

36. Plaintiff Hoffman is able and willing to complete all the steps necessary under Colorado law to obtain a concealed-carry permit. Other than his status as a nonresident, he could meet all the criteria for obtaining such a permit. He has not done so to date because he is plainly ineligible as a nonresident of Colorado.

## III. THROUGHOUT OUR HISTORY, THE RIGHT TO CARRY FIREARMS IN STATES WHERE A PERSON IS TRAVELING HAS BEEN RESPECTED

37. In *Bruen*, after examining the text of the Second Amendment and the Nation's historical tradition of firearm regulation, the Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

38. The Supreme Court did not qualify that holding by recognizing only a right to carry *in one's state of residence*, and there is no historical tradition of states or localities imposing such restrictions. Indeed, far from *supporting* such a restraint on bearing arms, and although it is not Plaintiffs' burden to carry, the Nation's historical tradition squarely *rejects* it.

39. During the colonial period, at least four colonies *required* persons traveling to carry arms with them for their safety, reflecting the heightened danger presented by travel. *See* 1 WILLIAM WALLER HENING, LAWS OF VIRGINIA 127, 198 (N.Y.C., R. & W. & G. Bartow 1823) (1619); 1 NATHANIEL B. SHURTLEFF, RECORDS OF THE GOVERNOR AND COMPANY OF THE MASSACHUSETTS BAY 190 (Bos., William White 1853) (1628–1641); 1 JOHN RUSSELL BARTLETT, RECORDS OF THE COLONY OF RHODE ISLAND AND PROVIDENCE PLANTATIONS 94 (Providence, A. Crawford Greene and Brother 1856) (1636–1663); 3 WILLIAM HAND BROWNE, ARCHIVES OF MARYLAND 103 (Balt., Maryland Historical Society 1885) (1636–1667).

40. Even when states did not *require* that travelers carry arms, there is a longstanding historical tradition—stretching from before the Founding until after Reconstruction—of traveler exceptions to carry restrictions that otherwise applied. *See, e.g.*, AARON LEAMING & JACOB SPICER, NEW JERSEY ACTS 290 (Phila. W. Bradford 1881) (1686) (prohibiting "privately" wearing various weapons but exempting "all strangers, travelling upon their lawful occasions thro this Province, behaving themselves peaceably"); ACTS FOR THE COMMONWEALTH OF KENTUCKY 100–01 (Frankfort, Gerard & Berry 1813) (prohibiting the concealed carry of certain weapons "unless when travelling on a journey"); *McIntire* v. *State*, 83 N.E. 1005, 1005 (Ind. 1908) (citing statute barring "[e]very person, not being a traveler" from "wear[ing] or carry[ing] a" concealed "dirk, pistol, sword in a cane, or other dangerous weapon").

41. By the end of the Antebellum Era, other states, including Tennessee, Arkansas, and Alabama, banned concealed carry but provided exceptions for travelers. *See* ACTS OF THE STATE OF TENNESSEE 15–16 (Knoxville, Heiskell & Brown 1821) ("[N]othing herein contained shall affect . . . any person that may be on a journey to any place out of his county or state."); REVISED STATUTES OF THE STATE OF ARKANSAS 280 (Bos. Weeks, Jordan & Co. 1838) (1837 law applying to every person "unless upon a journey"); ACTS OF THE STATE OF ALABAMA 148–49 (Tuscaloosa, Hale & Phelan 1841) (prohibiting concealed carry "unless such person shall . . . be travelling, or setting out on a journey").

42. This tradition continued well past the Civil War. *See, e.g.*, STATUTES OF CALIFORNIA 748 (Sacramento, Benj. P. Avery 1863); STATUTES OF THE STATE OF NEVADA 66 (Carson City, Joseph E. Eckley 1867); LAWS OF THE TERRITORY OF ARIZONA 21–22 (Prescott 1883); LAWS OF THE TERRITORY OF NEW MEXICO 55–57 (L.V., J. A. Carruth 1887); WILL T. LITTLE, L.G. PITMAN,

R. J. BARKER, STATUTES OF OKLAHOMA 495 (Guthrie 1891); SESSION LAWS OF WYOMING TERRITORY 140 (Cheyenne, 1890).

43. Local governments, too, recognized a traveler exception to carry laws. *See, e.g.*, CHARTER AND ORDINANCES OF THE CITY OF SACRAMENTO 173, Ordinance No. 84 (Sacramento, D. Johnston & Co. 1896); REVISED CHARTER AND COMPILED ORDINANCES AND RESOLUTIONS OF THE CITY OF LOS ANGELES 83 (Wm. M. Caswell 1878).

44. In light of this tradition, James Kent, in his seminal work, recognized the traveler exception as deeply rooted in American law. *See* 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 340 (6th ed. 1848).

45. Since *Bruen*, multiple federal courts have held that nonresident carry bans are unconstitutional. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025); *Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024); *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025).

**COUNT ONE**

**Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments to the United States Constitution**
**(42 U.S.C. § 1983 & *Ex parte Young*)**

46. Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

47. The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II.

48. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. *McDonald*, 561 U.S. at 749–50; *id.* at 805 (Thomas, J., concurring).

49. "[T]he Second and Fourteenth Amendments protect the right to carry handguns outside the home for self-defense." *Wolford*, 609 U.S. at 190.

50. That resolves this case. The right to bear arms is not contingent on one's state of residence, as confirmed by the textual and historical analysis required by *Bruen*.

51. *Bruen* establishes a two-step framework for analyzing a Second Amendment challenge like this one. First, the court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If it does, then "the Constitution presumptively protects that conduct." *Id.* At the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (quotation marks omitted).

52. Plaintiffs—who are "ordinary, law-abiding, adult citizens"—are indisputably "part of 'the people' whom the Second Amendment protects." *Id.* at 31–32.

53. Handguns are indisputably "arms." *Id.* at 32.

54. The Supreme Court in *Bruen* made clear that "the plain text of the Second Amendment protects" Plaintiffs' desired conduct—"carrying handguns publicly for self-defense." *Id.*

55. Because the combined effect of Denver and Colorado law prohibits Plaintiffs from doing just that, it clashes with the plain text of the Second Amendment.

56. To justify this restriction, Defendants must show that it is consistent with the Nation's historical tradition of firearm regulation—that is, they must "identify a well-established and representative historical analogue" for the restriction that burdened the right to keep and bear arms in a similar way and for similar reasons. *Id.* at 29–30, 37–38 (emphasis omitted). "An outlier legal rule adopted in a few locales is not enough." *Wolford*, 609 U.S. at 207. And "when a challenged regulation addresses a general societal problem that has persisted since the 18th

century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 597 U.S. at 26.

57. *Bruen* leaves no room for blanket bans on law-abiding citizens carrying handguns in public. As the Supreme Court recognized after canvassing the Nation's history, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense." *Id.* at 70.

58. Insofar as Defendants believe that the right recognized in *Bruen* is not available to nonresidents of the state in question, Defendants cannot satisfy their burden because the Nation's historical tradition does not support laws prohibiting otherwise qualified nonresidents from carrying firearms in public for self-defense—even though the interstate travel of persons with firearms is nothing new. *See, e.g.*, *Higbie*, 795 F. Supp. 3d at 340–41 (recognizing "the lack of supportive historical tradition for restricting firearm licenses to out-of-state residents" and thereby denying them the ability to carry a firearm in public). To the contrary, as detailed above, the Nation's historical tradition shows that travelers were generally afforded *more* leeway to carry arms, not less.

59. Accordingly, Defendants are violating nonresidents', including Plaintiff Hoffman's and Plaintiff FPC's members', Second and Fourteenth Amendment protected rights by (1) prohibiting them from carrying a handgun in Denver for self-defense and (2) denying them the benefits of certain exemptions afforded by federal and state law to those with valid concealed-carry permits, including but not limited to the ability to carry near schools and in the parking area of certain government buildings.

60. As a direct and proximate result of this infringement on all nonresidents', including Plaintiff Hoffman's and Plaintiff FPC's members', Second and Fourteenth Amendment-protected rights, Plaintiff Hoffman and Plaintiff FPC's members will suffer an unlawful and irreparable deprivation of a fundamental constitutional guarantee.

## COUNT TWO

**Deprivation of Plaintiffs' Rights under the Privileges and Immunities Clause (42 U.S.C. § 1983 and *Ex parte Young*)**

61. Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

62. The Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." This provision "removes 'from the citizens of each State the disabilities of alienage in the other States.'" *Saenz v. Roe*, 526 U.S. 489, 501 (1999) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). It bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.* at 396.

63. Plaintiff Hoffman~~, as well as~~ and similarly situated individuals, including certain of Plaintiff FPC's members, are nonresidents of Colorado who desire to lawfully carry a handgun while in Colorado and enjoy the privileges available to holders of valid carry permits.

64. Colorado's refusal to grant carry permits to residents of other states who travel to Colorado, based solely on their status as nonresidents, violates the Privileges and Immunities Clause by discriminating against out-of-state residents solely because they are out-of-state

residents. Such discrimination denies nonresidents the ability to exercise their Second Amendment rights when they travel to Colorado.

## PRAYER FOR RELIEF

65. WHEREFORE, Plaintiffs respectfully pray for the following relief:

a. Declare that Denv., Colo., Rev. Mun. Code ch. 38, art. IV, div. 2, § 38-118(a), (b), and (d), and COLO. REV. STAT. §§ 18-12-203(1)(a) and 18-12-213(1), violate the right to keep and bear arms, both facially and as-applied, as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, as well as the Privileges and Immunities Clause of Article IV, insofar as they leave nonresident persons without any lawful means to carry a handgun in public for self-defense while in Denver or within school zones throughout the State and the parking areas of public university campuses and certain government buildings;

b. Preliminarily and permanently enjoin Defendants, and all those acting in concert or participation with them, from enforcing Denv., Colo., Rev. Mun. Code ch. 38, art. IV, div. 2, § 38-118(a), (b), and (d), and COLO. REV. STAT. §§ 18-12-203(1)(a) and 18-12-213(1), in conjunction with one another, so as to leave Plaintiff Hoffman and similarly situated individuals, including Plaintiff FPC's members, without any lawful means to carry a handgun in public for self-defense while in Denver or within school zones throughout the State and the parking areas of public university campuses and certain government buildings; for complete relief, Defendants must issue carry licenses to Plaintiff Hoffman and similarly situated individuals, including Plaintiff FPC's nonresident members;

c. Award Plaintiffs nominal damages against the City and County of Denver;

d. Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and

e. Grant any and all other legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: ~~September 29~~October 6, 2026

Respectfully submitted,

*/s/ David H. Thompson*
David H. Thompson
Peter A. Patterson
William V. Bergstrom
Riley W. Walters
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
rwalters@cooperkirk.com

*Counsel for Plaintiffs*