**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04837-PAB

GENE HOFFMAN, et al.,
Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.,
Defendants.

---

**DEFENDANTS ARMANDO SALDATE AND MATTHEW PACKARD'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

## INTRODUCTION

Colorado's lenient public-carry firearm regime allows the open carry of handguns without a permit, allows concealed carry permits for all residents, and recognizes the permits of nonresidents whose home states participate in a reciprocity regime with Colorado. As the Tenth Circuit has held, Colorado's firearm laws are consistent with historical firearm regulations, the Second Amendment, and the Privileges and Immunities Clause, including as applied to nonresidents. *Peterson v. Martinez*, 707 F.3d 1197, 1215 (10th Cir. 2013). Plaintiffs' challenge to Colorado's permitting regime cannot overcome that binding and on-point precedent, and their Motion for Preliminary Injunction ("Mot.") (Dkt. 13) should be denied as to the State Defendants.

As for Plaintiffs' challenge to Denver's laws, their attempt to characterize those laws as an "outright prohib[ition]," on the public carry of firearms, *see* Mot. 1, is simply not accurate. Denver ordinances (like State law) create an exemption that allows nonresidents to carry a loaded firearm in their car for self-defense when traveling through the city. Likewise, Denver expressly allows individuals to carry a firearm "with valid authorization from the city," among other exceptions. Denv., Colo. Rev. Mun. Code ("DRMC") § 38-118. Plaintiffs fail to address those exceptions, much less argue that they fail to provide adequate Second Amendment protections.

Plaintiffs' Motion also fails to demonstrate any of the equitable factors required for a preliminary injunction. Plaintiffs ask this Court to short-circuit the entire process of civil litigation and declare multiple state and city laws unconstitutional based solely on Mr. Hoffman's desire to carry a gun in some unidentified "public areas and establishments within Denver" during his upcoming trip in January 2027. Dkt. 13-1 ¶ 9. Plaintiffs' vague allegations fall short of establishing a genuine risk of *irreparable* injury that would require this Court to intervene immediately on an

interim basis, particularly when the laws at issue have been on the books for decades and Plaintiffs unilaterally delayed *at least* five months (and likely much longer) before bringing suit.

A preliminary injunction would be particularly inappropriate given that Plaintiffs ask this Court to order Defendants to create a brand-new permitting regime for nonresidents on a *preliminary* basis. Nor does Plaintiffs' Motion acknowledge the damage to the public interest (including to Coloradans with concealed carry permits) if this Court were to undercut Colorado's reciprocity regime by declaring that all nonresidents are entitled to apply for a Colorado concealed carry permit regardless of any reciprocity, as Plaintiffs request. *See* Mot. 12.

Finally, Plaintiffs' requested relief is impermissible because it seeks non-party relief. It is also fatally overbroad because it would require a state-wide change to the law when their *only* alleged injury relates to a *single* individual, in Denver, for a brief period in January 2027.

## LEGAL BACKGROUND

Colorado allows the open carry of firearms without a permit. *See* C.R.S. § 18-12-105. Consistent with longstanding precedent, however, the State regulates the concealed carry of firearms. *Id.*; *see Peterson*, 707 F.3d at 1209. It is a crime for a person to carry a concealed firearm unless they meet one of the statutory exceptions, including for individuals who (1) are "in a private automobile or other private means of conveyance who carries a weapon for lawful protection of such person's or another's person or property while traveling"; or (2) who "at the time of carrying a concealed weapon, held a valid written permit to carry a concealed weapon." *Id.* § 18-12-105(2).

Colorado has a "shall issue" concealed carry permitting regime that requires applicants to (1) be at least 21 years old; (2) be a legal resident of Colorado; (3) demonstrate competence with a handgun by submitting evidence, which can include a "training certificate from a concealed

handgun training class obtained within the one year preceding submittal of the application"; and (4) not have committed any disqualifying act (*i.e.*, a perjury conviction or a civil protection order entered against them). *Id*. § 18-12-203(1). For nonresidents, Colorado has a reciprocity regime, through which nonresidents can obtain a concealed carry permit if they are 21 or older, their home state recognizes Colorado's concealed carry permits, and they are either a resident of that state or a resident of Colorado for no more than 90 days. *Id*. § 18-12-213(1).

Colorado prohibits public carry of firearms in designated "sensitive places," including government buildings, and on the grounds of a licensed childcare centers, schools, and universities. C.R.S. § 18-12-105.3, -105.5. A permittee may carry a concealed handgun in the adjacent parking area of a designated government building, C.R.S § 18-12-105.3(2)(e), and may "have a handgun on the real property of [a] public school so long as the handgun remains in the permittee's vehicle, and, if the permittee leaves the vehicle unattended, the permittee stores the firearm pursuant to [C.R.S. §] 18-12-114.5," C.R.S § 18-12-214(3)(a).

Denver's prohibition on open and concealed carry of firearms, DRMC §§ 38-118(a), (b), contains five exceptions, including for individuals (1) "acting with valid authorization from the city" or (2) who are "[t]ransporting the weapon while travelling within a private automobile," *id.* § 38-118(c). Denver also allows concealed carry with a "valid permit." *Id.* § 38-118(d).

## PROCEDURAL HISTORY

On August 12, 2026, two individuals and the National Rifle Association filed suit in this District challenging "the combined operation of Colorado's concealed handgun-permit laws and Denver's open-carry ban." Compl. ¶ 1, *Howeth v. City & Cnty. of Denver*, No. 26-cv-03690-DDD-KAS, Dkt. 1. On August 31, 2026, the *Howeth* Plaintiffs added the Colorado State Shooting

Association as a Plaintiff. *Id.*, Dkt. 12. Then, on September 4, 2026, they filed a motion for preliminary injunction. *Id.*, Dkt. 19. The *Howeth* Motion is fully briefed and pending resolution.

Plaintiffs filed this copycat suit on September 29, 2026, challenging the same State and Denver laws as the *Howeth* Plaintiffs, but naming different State Defendants: the Director of the Colorado Bureau of Investigation and the Chief of the Colorado State Patrol. Dkt. 1 ¶¶ 12-17.

Mr. Hoffman asserts that he intends to visit Denver in January 2027, that he "spend[s] time in public areas and establishments within Denver city and county limits" when he visits, and that he would carry a gun there if he were permitted to do so. Dkt. 13-1 ¶¶ 9-10. He also asserts that he is unable to possess a handgun near schools (including Colorado State University, which his son attends) and government buildings. *Id.* He asserts he would carry a handgun "throughout Colorado" but for the restrictions. *Id.* ¶ 10. Plaintiffs do not allege that Mr. Hoffman has applied for any permit from the City & County of Denver or any sheriff's office in the State; nor do they allege that he has completed the prerequisite handgun training. *See* Dkt. 9 ¶ 36.

The Motion seeks a mandatory injunction that would require Defendants to allow Mr. Hoffman "and all similarly situated nonresidents . . . to apply for and obtain concealed-carry licenses from the State." Mot. 12. In the alternative, Plaintiffs seek some (unidentified) "form of relief that allows Plaintiffs to exercise their constitutionally protected right to carry in public." *Id.*

## LEGAL STANDARD

A preliminary injunction is an "extraordinary" remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party requesting such relief must clearly establish that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause

> the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Id.* (citation omitted; alterations in original)); *see Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The burden is on the movant to establish his right to the relief requested, and that burden is even heavier when, as here, Plaintiffs seek an injunction that (1) alters the status quo and (2) constitutes a "mandatory" as opposed to prohibitory injunction. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

## ARGUMENT

### I. Plaintiffs cannot demonstrate a likelihood of success on the merits.

#### A. Plaintiffs cannot establish a Second Amendment violation based on State law.

Plaintiffs purport to challenge the "combined" effects of various federal, state, and local laws which they contend prohibit some non-Colorado residents from publicly carrying firearms in "certain circumstances," specifically (1) in Denver, (2) within 1,000 feet of schools, and (3) in the parking areas of government buildings and public universities. *See* Mot. 1. The critical problem with Plaintiffs' vague as-applied challenge to scattered statutory provisions across multiple jurisdictions is that the Motion fails to identify *any* unconstitutional aspect of *Colorado* law.

Plaintiffs' alleged inability to carry firearms in Denver is a matter of local government law. Colorado law does not prohibit the *open carry* of firearms in Denver, by residents or nonresidents. *See* C.R.S. § 29-11.7-104. Moreover, any prohibition on Plaintiffs' ability to engage in *concealed carry* in Denver (or anywhere else in Colorado) is irrelevant to Plaintiffs' claims against the State Defendants because, as Plaintiffs concede, "the carrying of concealed firearms is not protected by the Second Amendment." Mot. 11 (quoting *Peterson*, 707 F.3d at 1201). Any nonresident barrier to obtaining a permit is also directly attributable to Mr. Hoffman's home state, which refuses to

embrace the reciprocity Colorado offers. *See id.* § 18-12-213(1); *Peterson*, 707 F.3d at 1202 ("Colorado provides for reciprocity and recognition of CHLs [concealed handgun licenses] issued by other states, but only for states that provide reciprocity to Colorado CHLs."). But Plaintiffs do not challenge the constitutionality of their home states' reciprocity decisions here, and the State Defendants have no authority to afford them relief from those out-of-state laws. *See infra* § I.B.

Likewise, Plaintiffs' alleged inability to carry "within 1,000 feet of a school" is a matter of federal law. The Gun Free School Zones Act (GFSZA) makes it a crime to possess a firearm in a school zone. *See* 18 U.S.C. § 922(q)(2)(A); *id.* § 921(a)(26) (defining "school zone" to include "a distance of 1,000 feet from the grounds of a public, parochial or private school"). Plaintiffs do not argue that GFSZA is unconstitutional, or that the State Defendants have any connection to its enforcement. *See* Mot. 3-4. Mr. Hoffman's complaint that he "risks violating the GFSZA" if he carries a gun near Colorado schools, *id.* at 3, is irrelevant to the constitutionality of Colorado's laws, and it is also not susceptible to injunctive relief aimed at State officials. *See infra* § I.B.

Finally, Plaintiffs contend that Colorado law prevents them from carrying "in the parking area of public universities and certain government buildings." Mot. 11. But Plaintiffs have *no* constitutional right to carry firearms in such places, openly or concealed: The Supreme Court has specifically identified schools and government buildings as "sensitive places" where it is "settled . . . that arms carrying c[an] be prohibited consistent with the Second Amendment." *Bruen*, 597 U.S. at 30.[1] Plaintiffs make no effort to demonstrate that Colorado's laws designating schools or

[1] *E.g.*, *Maryland Shall Issue, Inc. v. Montgomery Cnty.*, 680 F. Supp. 3d 567, 583 (D. Md. 2023) (discussing history of sensitive-place regulations); *Schoenthal v. Raoul*, 150 F.4th 889, 920 (7th Cir. 2025) (similar); *United States v. Allam*, 140 F.4th 289, 297-99 (5th Cir. 2025) (similar); *see*

government buildings as "sensitive places" are unconstitutional, and they seek no relief against those laws. *See* Dkt. 9, Prayer for Relief ¶¶ 1-6.[2] To the extent the Motion now contends otherwise, such claims are beyond the scope of the operative complaint and not the proper subjects of preliminary injunctive relief. *E.g. Occupy Denver v. City & Cnty. of Denver*, No. 11-cv-03048-REB-MJW, 2011 WL 6096501, at *3 (D. Colo. Dec. 7, 2011) ("Injunctive relief may be awarded based only on the claim and grounds asserted in the complaint and the motion.").[3]

### A. *Peterson* forecloses Plaintiffs' Privileges and Immunities arguments.

*Peterson* holds that the "carrying of concealed firearms is not protected . . . by the Privileges and Immunities Clause." 707 F.3d at 1201. Accordingly, Plaintiffs' challenges to restrictions State law places on concealed carry—in Denver, schools, or government buildings—are irrelevant to their privileges-and-immunities claim against the State Defendants.

Plaintiffs attempt to sidestep *Peterson*'s clear holding by purporting to challenge a vaguely defined "total ban" in "many parts of the State," *i.e.*, Denver, school zones, and the parking lots of

---

*also Bonidy v. U.S.P.S.*, 790 F.3d 1121, 1125 (10th Cir. 2015) (analyzing whether parking lot should be "considered a single unit" with government building under sensitive places doctrine).

[2] Plaintiffs do not in any way challenge Colorado "sensitive places" laws. Nevertheless, at or before any hearing, Defendants reserve the right to seek discovery and present evidence, including expert testimony, on the Nation's history of prohibiting firearms in sensitive places.

[3] Plaintiffs have not demonstrated Article III standing for a challenge to Colorado's sensitive place laws. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press[.]"). As *Bonidy* makes clear, whether a given location is properly characterized as a sensitive place is a fact-specific analysis. *See* 790 F.3d at 1125 (considering whether a parking lot "should be considered as a single unit with the [government] building" based in part on the location of a drop-off postal box). Without identifying any government or university parking lot they intend to visit, Plaintiffs cannot demonstrate that such a location is not a "sensitive place" within the meaning of *Bruen* and *Heller*. *E.g.*, *Springer v. Grisham*, 2025 WL 2793787, at *4 (10th Cir. Oct.1, 2025) (finding plaintiff lacked standing to challenge prohibition on firearm carry in playgrounds where plaintiff alleged no "concrete plans to visit a single specific park or playground . . . with a firearm").

government buildings and universities. Mot. 14. When understood in the context of the *specific* restrictions Plaintiffs complain of, however, their arguments fail for the same reasons described above. Namely: (1) Plaintiffs' alleged inability to open carry in Denver is unrestricted by Colorado law; (2) their alleged inability to carry in GFSZA-defined school zones is a matter of federal law, unless such zones are also "sensitive places" under State law; and (3) to the extent Plaintiffs challenge State restrictions on carrying firearms in sensitive places—whether in school zones or near public universities or government buildings—Plaintiffs have alleged no right to do so.[4]

Plaintiffs could not plausibly argue that carrying weapons into Colorado's school zones, or onto the grounds of its public universities or government buildings "impact[s] [their] ability to pursue a common calling . . . result[s] in unfavorable tax consequences, or limit[s] [their] access to the courts." *Peterson*, 707 F.3d at 1215 (citation omitted). Thus, as in *Peterson*, this Court should reject Plaintiffs' privileges-and-immunities claim against the State Defendants "for largely the same reasons" as their Second Amendment claim. *Id.*

**B. The State Defendants are immune from suit under the Eleventh Amendment.**

Neither Saldate nor Packard enforce the ill-defined "carry regime" that Plaintiffs challenge, and neither can offer Plaintiffs the relief they seek by "grant[ing] carry licenses to nonresidents." Mot. 15. The Eleventh Amendment bars Plaintiffs' suit against these State Defendants.

---

[4] Plaintiffs do not allege, for example, that carrying firearms into school zones is "sufficiently basic to the livelihood of the Nation" under *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 108 (1988) (citation omitted). Nor do they contend that prohibitions on carrying weapons into the parking lots of universities or certain government buildings might "hinder the formation, the purpose, or the development of a single Union." *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978). And Plaintiffs cannot show that sensitive-places prohibitions are not "closely related to the advancement of a substantial state interest." *Friedman,* 487 U.S. at 65. They plainly are, as evidenced by the longstanding laws forbidding carrying firearms in such places, and the total absence of "disputes regarding the lawfulness of such prohibitions." *Bruen*, 597 U.S. at 30.

State officials sued in their official capacities are immune from suit under the Eleventh Amendment because they are "an arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). *Ex parte Young* offers a narrow exception to this immunity when a plaintiff sues a state official for prospective relief concerning ongoing violations of federal law. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). Plaintiffs bear the burden of alleging facts establishing that the state official has "a particular duty to enforce" the challenged statute and (2) "a demonstrated willingness to exercise that duty." *Id.* (citations omitted); *see Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (courts "presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" (citation omitted)). And critically, the state official sued must be able to award the relief sought. *Ex Parte Young,* 209 U.S. 123, 157 (1908); *e.g.*, *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997).

Plaintiffs do not establish that CBI's Director or the Chief of the Colorado State Patrol have a "particular duty" to enforce the "combined effect" of statutes they challenge. Although they contend Saldate and Packard broadly "enforce" the state's "concealed-carry laws," Dkt. 9 ¶¶ 13-14, their Motion admits this "is not a case about concealed carry," Mot. 1, and, again, does not contest that concealed carry is unprotected by the Second Amendment. Mot. 11. Nor do Plaintiffs contend that the federal GFSZA or the State's sensitive places laws are unconstitutional, facially or as applied. The *only* declaratory relief Plaintiffs seek, as far as state law is concerned, is against C.R.S. § 18-12-203(1)(a) and 18-12-213(1). *See* Dkt. 9 ¶¶ 65.a; 65.b. On this point, *Peterson* is unequivocal: Colorado sheriffs "are responsible for administering the reciprocity system," and the statute "instructs each sheriff to implement and administer," C.R.S. § 18-12-201 through 18-12-216, "including the [concealed carry permit] reciprocity provisions found in [C.R.S. § 18-12-

213].” *See* 707 F.3d at 1206. Plaintiffs cite no provision of Colorado law imposing on Saldate or Packard a duty to enforce C.R.S. § 18-12-203(1)(a) and 18-12-213(1).

The same goes for Plaintiffs’ request to “permit nonresidents to apply for and obtain *concealed-carry* licenses from the State.” Mot. 12. Saldate and Packard have no ability to review applications or award concealed carry permits, and Plaintiffs do not argue otherwise. Without a showing that Saldate or Packard can “perform the act required” to provide the relief sought, Plaintiffs cannot overcome their Eleventh Amendment immunity. *Klein* 975 F. Supp. at 1417.

## II. The remaining *Winter* factors do not support entry of an injunction.

Plaintiffs ask this Court to dispense with three-quarters of the *Winter* test in a single paragraph, *see* Mot. 14-15, asserting that they need not make any independent showing of irreparable harm, the public interest, or the balance of the equities. Plaintiffs are mistaken. *Winter* requires this Court to analyze all four factors, and Plaintiffs’ failure to satisfy *any* equitable factor warrants denial of their Motion, even in constitutional cases.

### A. Plaintiffs cannot demonstrate irreparable harm.

“To constitute irreparable harm, an injury must be certain, great, actual ‘and not theoretical.’” *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted). Thus, “the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.” *Id.* (citation, emphasis omitted). To be sure, courts have recognized that the existence of a likely constitutional injury can create a presumption that the injury is irreparable. *See, e.g.*, *Ortega v. Lujan Grisham*, 148 F.4th 1134, 1142 (10th Cir. 2025) (acknowledging “presumption” of irreparable harm for constitutional claim). But the mere existence of a constitutional claim does

not, on its own, obviate the irreparable harm inquiry. *See Heideman*, 348 F.3d at 1190 (finding loss of First Amendment freedoms irreparable but holding it is "necessary, however, to consider the *specific* character of the First Amendment claim" (emphasis added)). Even where some alleged constitutional harm is present, the Court must examine the specific facts of Plaintiffs' claim and weigh the scope of allegedly "irreparable" harm alongside other equitable factors. *See id.*; *Americans for Prosperity Found. v. Albence*, 191 F.4th 169, 177 (3d Cir. 2026) ("We may not 'do away with the traditional prerequisites for injunctive relief simply because First Amendment freedoms [a]re implicated.'" (citation omitted)); *EOG Resources, Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 872 (6th Cir. 2025) ("[P]reliminary injunctions aren't shortcuts to the merits").

First, Plaintiffs have not shown a "clear and present need" for relief based on an "imminent" injury. *Heideman*, 348 F.3d at 1189. Mr. Hoffman's vague assertion that he cannot carry guns while in "public areas and establishments" in Denver, Dkt. 13-1 ¶ 6, does not meet his heavy burden at this preliminary stage. Under State law, Mr. Hoffman may openly carry his firearm outside of Denver's City limits. And under both State and City law, Mr. Hoffman is permitted to carry firearms in his vehicle for self-defense. C.R.S § 18-12-105(2)(b). Moreover, the DRMC states that Mr. Hoffman may apply for dispensation to carry a firearm within the City, DRMC § 38-118(c)(3), (5) yet Mr. Hoffman has not availed himself of that opportunity. Thus, it is unclear whether Mr. Hoffman will be prohibited from carrying his firearms on his future outings. Plaintiffs' failure to address Denver's exceptions deprives this Court of any basis to conclude Plaintiffs will be imminently injured—much less *irreparably* injured—on his January vacation.[5]

[5] For Plaintiff Firearms Policy Coalition, Inc. ("FPC") and "similarly situated" individuals, the Motion alleges no concrete harm whatsoever.

Second, the laws at issue have been in place for decades, and other plaintiffs have challenged those laws dating as far back as 2002. *See Trinen v. City & Cnty. of Denver*, 53 P.3d 754 (Colo. App. 2002) (rejecting challenge to Denver's firearm laws, including concealed carry regime); *Peterson*, 707 F. 3d at 1211 (rejecting challenge to state permitting regime). Given the history of the challenged regulations, Plaintiffs seek a disruption of the decades-old status quo, further increasing their substantial burden at this stage. *See O Centro Espirita*, 389 F.3d at 975.

Third, Plaintiffs' delay and the doctrine of laches both undermine any claim of irreparable harm. "Laches is an equitable doctrine that 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *See Archer v. Griswold*, 638 F. Supp. 3d 1246, 1256 (D. Colo. 2022) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)); *see Colo. Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025) ("[U]nreasonable delay undercuts a finding of irreparable harm.").

Plaintiff FPC was established in 2013[6] (the same year *Peterson* was decided) to, *inter alia*, "protect, defend, and advance . . . [the] individual right to keep and bear arms." Dkt. 13-2 ¶ 4. As part of that mission, it has challenged similar permitting regimes in California and New York, but it had not filed any equivalent suit in Colorado over the past 13 years. *See id.* ¶ 6. FPC offers no justification for its 13-year delay in bringing this challenge. *See Archer*, 638 F. Supp. 3d at 1256.

Mr. Hoffman's avers that he visited Denver in May 2026, meaning he delayed for *at least* five months before filing this Motion. Dkt. 13-1 ¶ 6. Moreover, based on Mr. Hoffman's son's enrollment in Colorado State University—and given that Mr. Hoffman regularly travels to Denver

---

[6] https://www.firearmspolicy.org/about

"at least two or three times a year," Dkt. 9 ¶ 34—the record suggests that Mr. Hoffman's son is not a freshman, and that Mr. Hoffman therefore knew of his alleged injury since at least the beginning of the 2025 academic year (meaning a delay of at least *15 months* before filing this Motion). Yet Mr. Hoffman offers no justification for his lack of diligence in bringing suit.[7]

Plaintiffs' failure to provide any explanation for their (lack of) diligence deprives Defendants (and this Court) of sufficient information to evaluate their claims. *See Uber Techs., Inc. v. Moss*, No. 1:25-cv-00096-DDD-KAS, 2025 WL 1420940, at *2 (D. Colo. Jan. 31, 2025). Regardless, their delay demonstrates that this case does not present a genuine emergency, and they have provided no reason to prejudice Defendants by dispensing with the ordinary rules of civil litigation and granting the "extraordinary" relief they seek. *See Heideman*, 348 F.3d at 1188.

**B. The equities and public interest weigh against an injunction.**

Plaintiffs also fail to meet their burden on the equities. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (equitable factors "merge when the Government is the opposing party").

First, Plaintiffs make no effort to address the state-funded administrative burden that their mandatory injunction would require. *See O Centro Espirita*, 389 F.3d at 975. Plaintiffs apparently ask this Court to order Defendants to stand up brand-new permitting regimes for nonresidents on a temporary basis. *See* Mot. 12. If Plaintiffs indeed make that request, the time, effort, and funds required to comply would be significant. *See Peterson*, 707 F.3d at 1204 (explaining burdens on

[7] Mr. Hoffman's delay also prevents the Court from issuing effective relief. Even if ordered to "grant carry licenses to nonresidents" on the same basis as residents before Mr. Hoffman's January trip, Mot. 15, sheriffs have 90 days by statute to act on a permit application. C.R.S. § 18-12-206. Assuming Mr. Hoffman could satisfy the permit requirements after this court's order (including taking the required 8-hour concealed handgun class), nothing would require the issuance of his permit before his January trip. *Id.*; *see* C.R.S. § 18-12-203 (criteria for obtaining permit).

state regarding investigation of nonresident applications for concealed carry). Those burdens would increase exponentially if Plaintiffs maintain their effort to include all "similarly situated" non-party individuals in this case. *But see Trump v. CASA*, 606 U.S. 831, 837 (2025).[8]

Second, the public has a strong interest in ensuring that handgun licensing regimes serve their public safety purpose, *see Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024), and those licensing regimes are more difficult to implement for nonresidents, *Peterson*, 707 F.3d at 1204. While Mr. Hoffman alleges that he is "a law-abiding and responsible" citizen that is eligible for a concealed-carry permit, FAC ¶¶ 10, 33, Plaintiffs offer no evidence to prove that allegation. Indeed, Mr. Hoffman makes no allegation that he has taken the handgun safety course that Colorado law requires, and therefore he plainly is *in*eligible for reasons other than his residence. *See* C.R.S. § 18-12-203(1). At minimum, any person applying for a concealed-carry permit would need to comply with the unchallenged aspects of Defendants' licensing regimes.

Third, to the extent Plaintiffs attack Colorado's reciprocity regime, Mot. 12, any injunction against that regime would undermine the State's important interest in applying pressure on other states to recognize Colorado's permits. *See* C.R.S. § 18-12-213(1). Without reciprocity restrictions, all nonresidents would be able to apply for concealed-carry permits in Colorado, but the same privilege would not extend to Colorado residents. *See id.* Thus, other states would no longer have any reason to recognize Colorado's permits, which would undermine the State's legitimate interest in encouraging other states to recognize its citizens' concealed-carry permits.

[8] To the extent Plaintiffs' requested relief would require the State to expend time and money complying, a bond under Rule 65(c) is both necessary and appropriate to ensure Colorado taxpayers are not required to foot the bill for any improperly issued injunction. *Contra* Mot. 15.

## III. Plaintiffs' requested remedy is improper and fatally overbroad.

This Court should also deny the Motion because it seeks an impermissible remedy.

First, the Motion's request for relief as to "similarly situated" individuals fails. Federal courts cannot grant injunctive relief to nonparties who have neither asked for relief nor demonstrated their entitlement to it. *CASA*, 606 U.S. at 844. Thus, any relief here would be limited to Mr. Hoffman and FPC. *Id.* And even if the relief could apply to non-parties, Plaintiffs provided *no information* about who those individuals are, much less established their eligibility for a permit under the unchallenged aspects of the licensing regimes.[9]

Second, Plaintiffs' request for a state-wide change in Colorado's concealed carry permitting regime, Mot. 12, is fatally overbroad. "[I]t is 'a well-settled principle that an injunction must be narrowly tailored to remedy the harm shown.'" *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1221 (D. Colo. 2001) (citation omitted). Here, even accepting Plaintiffs' theory wholesale, any relief must be tailored to the *specific* harm alleged (to Mr. Hoffman), to the relevant geography where the alleged harm will occur (the City of Denver), and to the relevant timeframe (Mr. Hoffman's January 2027 trip to Colorado). Dkt. 13-1 ¶¶ 6, 9. Any broader request for relief can be addressed (if at all) after a final judgment on the merits.

## CONCLUSION

This Court should deny Plaintiffs' Motion.

---

[9] To the extent Plaintiffs seek "facial" relief, their claim plainly fails. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). Plaintiffs make no attempt to establish that the laws they challenge are unconstitutional in all applications. Rather, their claim is as-applied to Mr. Hoffman's circumstances as a non-Coloradan who resides in a state that lacks reciprocity with Colorado, but who nevertheless visits Colorado and wishes to carry firearms in Denver.

Respectfully submitted this 11th day of November, 2026.

PHILIP J. WEISER
Attorney General

s/ Kyle M. Holter

s/ Kolya Glick

***Emily Burke Buckley***
First Assistant Attorney General
***Kyle M. Holter***
***Kolya D. Glick***
Senior Assistant Attorneys General
Public Officials Unit | State Services Section
Colorado Department of Law
1300 Broadway, Denver, CO 80203
Telephone: 720.508.6000
emily.buckley@coag.gov
kyle.holter@coag.gov
kolya.glick@coag.gov

*Attorneys for the State Defendants*