**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04837-PAB

GENE HOFFMAN;
FIREARMS POLICY COALITION, INC.,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.,

Defendants.

---

**DENVER DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

The City and County of Denver, Colorado, Ron Thomas, and Elias Diggins (the "Denver Defendants") respectfully submit this memorandum in response to Plaintiffs' Motion for Preliminary Injunction (Motion). ECF No. 13.

For decades, the City of Denver has regulated the public carry of handguns in a manner sensitive to both the need to maintain public order in dense urban areas and the Second Amendment rights of those living in, or traveling through, Denver. While in some instances Denver prohibits concealed and open carry of weapons, it allows open or concealed carry "with valid authorization from the city" or while "[t]ransporting the weapon while travelling within a private automobile … for the purposes of hunting or the lawful protection of such person or their property," among other exceptions. Denv., Colo. Rev. Mun. Code ("D.R.M.C.") § 38-118(c). Denver also allows concealed carry if a person "holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with *any* applicable federal, state, or local law." *Id.* § 38-118(d) (emphasis added).

Plaintiffs—a resident of California and a national pro-firearms organization—ask the Court to enjoin Denver's regulation of public carry, asserting that absent immediate relief they will suffer irreparable harm. They are wrong. Plaintiffs' request for a preliminary injunction misconstrues Denver law. Plaintiff Gene Hoffman allegedly has a California concealed-carry permit, and therefore he may carry a concealed handgun under Denver's ordinance *today*. For this reason and others, Plaintiffs fall far short of showing they are entitled to the extraordinary remedy of an immediate injunction against Denver.

*First*, Plaintiffs do not have standing. They incorrectly assert that "nonresidents from states that do not recognize Colorado's concealed-carry permits have no lawful means to carry a handgun in Denver." ECF No. 9, Amended Complaint ("Compl.") ¶ 4. But Denver law allows concealed carry by "concealed carry permit holders" in "conformance with any applicable federal, state, or local law," and open or concealed carry "with valid authorization from the city." D.R.M.C. § 38-118. Because Hoffman may already carry a concealed handgun under Denver law, and may open carry "with valid authorization," he has not asserted any injury caused by Denver law.

*Second*, Plaintiffs fail to demonstrate irreparable harm. Denver has regulated open carry since at least 1952 and concealed carry since the nineteenth century.[1] Plaintiffs fail to demonstrate any urgency necessitating immediate injunctive relief, in lieu of ordinary orderly litigation.

*Third*, Plaintiffs fail to show a likelihood of success on the merits regarding whether Denver's public carry regulations are unconstitutional. Under *New York State Rifle & Pistol*

---

[1] *See* Denv., Colo. Ordinance No. 41, § 5, at 2 (1952) (making it "unlawful for any person … to carry or use [] a revolver or pistol of any description," subject to certain exceptions on private property); Denv., Colo., Ordinances of the City, pt. 3, ch.5, art. 3 § 12 (Times Steam Printing Company 1884) (prohibiting concealed carry) (available at https://firearmslaw.duke.edu/laws/denver-ordinances-of-the-city-pt-3-ch-5-art-3-12-times-steam-printing-company-1884).

*Association Inc. v. Bruen*, cities can lawfully *eliminate* one kind of public carry—open carry or concealed carry—so long as they leave open the other kind. 597 U.S. 1, 59 (2022). Denver's ordinance eliminates neither; it provides options for *both* open and concealed carry. Plaintiffs point to no historical analogues inconsistent with Denver's ordinance. They challenge only the as-applied effect of Denver's open-carry ordinance combined with Colorado's licensing regime. They fall well short of justifying an extraordinary injunction of Denver's public carry regulations.

*Fourth*, Plaintiffs' request for an equitable remedy on behalf of untold numbers of people who are not party to this litigation is squarely foreclosed by the Supreme Court's decision in *Trump v. CASA*, 606 U.S. 831 (2025). And their request to enjoin Denver law is far broader than necessary to address the allegations in the Complaint, so should be denied.

## BACKGROUND

### A. Denver Law Regulates The Carry Of Firearms

Denver Municipal Code Section 38-118 prohibits (a) "any person to wear, carry, or transport any weapon concealed on or about their person" and (b) "any person to openly wear, carry, or transport any weapon on or about their person or vehicle," "[e]xcept as provided in subsections (c) and (d)," as applicable. Section 38-118(c) allows the open or concealed carry of firearms (1) by a "law enforcement officer," (2) by an "active-duty member of the United States Armed Forces, while engaged in the performance of their duties," (3) when "[a]cting with valid authorization from the city," (4) while "[i]n their own dwelling, place of business, or on property owned or under their control," or (5) while "[t]ransporting the weapon while travelling within a private automobile or other private means of conveyance for the purposes of hunting or [for] lawful protection." D.R.M.C. § 38-118(c). Section 38-118(d), titled "Exception for concealed carry permit holders," authorizes concealed carry "if at the time of carrying a handgun, the person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance

with any applicable federal, state, or local law." The Denver Police Department processes requests to carry firearms in Denver. *See* Decl. of Ron Thomas ("Thomas Decl.") ¶¶ 1, 7.

**B. Plaintiffs Seek An Immediate Injunction**

Plaintiffs are California resident Gene Hoffman and firearm-advocacy organization the Firearms Policy Coalition, Inc. ("FPC"). Hoffman allegedly holds concealed-carry permits from California, Utah, Arizona, and Florida and carries his handgun with him in public where federal, state, and local law permit him to do so. Compl. ¶ 33. Hoffman travels to Denver "at least two or three times per year" to visit his friends and his son, who is a student at Colorado State University. *Id.* ¶ 34. While in Colorado, Hoffman "spends time in public areas and establishments within Denver city and county limits." *Id.* He alleges that he has never sought to apply for any public carry permit in Colorado because "he is plainly ineligible as a nonresident of Colorado." *Id.* ¶ 36. Hoffman is a member of the Firearms Policy Coalition. *Id.* ¶ 10.

The Firearms Policy Coalition is a nonprofit organization incorporated in Delaware and with its principal place of business in Nevada. Compl. ¶ 11. It has "litigated" cases involving the right to carry "in California, New York, and Louisiana." *Id.* Other than the allegations about Hoffman, the complaint does not allege any facts about FPC's members, such as the geographic distribution or numbers of its members, or the requirements for becoming a member. The complaint and preliminary-injunction motion do not identify any other FPC member. Nonetheless, the FPC alleges that it brings this action "on behalf of its members, including Hoffman, who are adversely and directly harmed" by the enforcement of Denver and Colorado law. *Id.*

Plaintiffs seek the extreme remedy of a preliminary injunction. They allege that the City and County of Denver "enact[ed] and enforce[d] [an] unconstitutional carry regime," *id.* ¶ 12, and that Chief Thomas and Sheriff Diggins "enforce[] state laws and local ordinances, including the carry restrictions at issue here," *id.* ¶¶ 16–17, and that Sheriff Diggins additionally "implement[s]

and administer[s]" the concealed-carry permitting process, *id.* ¶ 17. On that basis, they seek an order enjoining the enforcement of Denver law and Colorado law "in conjunction with one another." *Id.* ¶ 65. They request an injunction that would apply to "all nonresidents." Mot. 2.

## <u>PRELIMINARY INJUNCTION STANDARD</u>

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party must make a "clear and unequivocal" showing, *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004), that: "(1) it is substantially likely to succeed on the merits, (2) it will suffer irreparable injury if the injunction is denied, (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest," *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021).[2] Where plaintiffs seek an injunction that would "alter the status quo," they must make "a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 883–84.

## <u>ARGUMENT</u>

### I. Plaintiffs Lack Standing To Seek An Injunction Against The Denver Defendants

Plaintiffs "must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). To do so, they must demonstrate (1) "an injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a "likelihood that the injury will be redressed by a favorable decision." *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016). At the preliminary injunction stage, plaintiffs must make a "clear showing that they are likely to establish each element" and "must move beyond the mere allegations in their pleadings and provide specific facts, supported by

---

[2] Internal quotation marks, citations, and alterations are omitted from all citations, unless noted.

affidavits or other evidence, to demonstrate standing." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 108–110 (10th Cir. 2024).

**A. Hoffman Has Suffered No Injury In Fact From Denver's Ordinance**

To establish injury in fact, plaintiffs must show "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by [the challenged] statute*," and (2) that "there exists a credible threat of prosecution thereunder." *Hickenlooper*, 823 F.3d at 545 (emphasis added, alteration in original). Hoffman has not demonstrated that his ability to publicly carry is prohibited under Denver law. Denver law's concealed-carry restriction has an "[e]xception for concealed carry permit holders" that authorizes concealed carry "if at the time of carrying a handgun, the person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law." D.R.M.C. § 38-118(d). Hoffman alleges that he has concealed-carry permits from the states of California, Utah, Arizona, and Florida. Compl. ¶ 33. Thus, taking as true the allegations in the Complaint, Denver law permits Hoffman to carry a concealed handgun. He cannot establish an injury when Denver allows the conduct he wishes to engage in—namely, publicly carrying a handgun.

Denver law also provides other additional avenues for Hoffman to carry openly or concealed. Section 38-118(c)(3), for instance, permits open or concealed carry "with valid authorization from the city," among other exceptions. Hoffman does not allege he was denied such authorization to open or concealed carry from the City, nor does he allege he even sought it. Consistent with Denver law, the City would have considered such a request for authorization if it had received one. *See* Thomas Decl. ¶¶ 5–7 . Courts dismiss pre-enforcement Second Amendment claims for lack of standing when plaintiffs did not pursue available avenues to keep or bear arms. In *DeWilde v. Attorney General of United States*, the Tenth Circuit held that a plaintiff lacked standing to seek prospective relief for possession of a machine gun because he had not, "in his

individual capacity, applied for or been denied an application to make a machinegun" and had therefore not suffered a denial. 2024 WL 1550708, at *2 (10th Cir. 2024). Other courts of appeals have held similarly. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (no injury in fact where plaintiffs failed to allege they applied for firearm license); *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012) (plaintiff "lack[ed] standing to raise a claim as to a[n] [open carry license]" because "she has never applied for such a license, been denied one, or had such a license revoked"); *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996) (plaintiff lacked standing because she was told of additional options for getting a firearm license she did not use and "the completion of the statutory procedure [is] necessary to establish … injury"). Here, because Hoffman did not seek authorization to carry under Denver law, he fails to meet his burden of establishing he was injured by the Denver Defendants.[3]

For Denver Defendants Sheriff Diggins and Chief Thomas, Plaintiffs allege that Sheriff Diggins is charged by State law to "implement and administer" the State of Colorado's concealed-carry permitting process, *see* Compl. ¶ 17; Colo. Rev. Stat. § 18-12-201(3), and that both the Sheriff Department and the Police Department "enforce[] state laws." Compl. ¶¶ 16–17. That does not grant standing against either Sheriff Diggins or Chief Thomas. Hoffman still could have, but did not, seek "valid authorization" to open carry under Section 38-118(c)(3), which would have allowed him legally to carry in Denver notwithstanding Colorado state concealed-carry

[3] Plaintiffs in a case involving similar claims, *Howeth v. City and County of Denver, et al.* (D. Colo. 26-cv-3690) contend that Section 38-118(c)(3)'s authorization exception is limited to security personnel based on D.R.M.C. 42-137, an unrelated section of the Denver code. *See Howeth*, ECF No. 38, at 2-3. It is not. Section 38-118(c)(3) contains no such limitation to security personnel: it applies whenever a person is "[a]cting with valid authorization from the city." Section 42-137 separately governs the circumstances in which security-service licensees may carry firearms while performing security services. Nothing in that provision purports to make such authorization the exclusive form of "valid authorization" under Section 38-118(c)(3).

requirements.[4] This failure to allege any injury under Denver's ordinance therefore proves that Plaintiffs lack standing against any Denver Defendant.[5]

### B. Because Hoffman Does Not Have Standing, FPC Does Not Have Standing

The only harm that FPC alleges is to its members. *See* Compl. ¶ 11 (alleging harm based on "Defendants' enforcement of the challenged laws" against FPC members). As such, to establish standing, FPC "ha[s] to prove … that its members would otherwise have standing to sue in their own right." *Hickenlooper*, 823 F.3d at 550 (organization did not have standing where its member failed to show evidence of injury). But Plaintiffs allege no facts—much less offer any evidence—showing that Denver's ordinance prohibited any of their members from carrying in Denver (they do not allege any facts about any other members at all). Their standing thus turns entirely on the standing of Hoffman. Because Hoffman does not have standing, neither does FPC.

## II. Plaintiffs Fail To Justify The Extraordinary Remedy Of A Preliminary Injunction

### A. Plaintiffs Fail To Show Irreparable Harm

Because Hoffman has not availed himself of avenues to public carry provided by Denver law, or otherwise shown that Denver law precludes him from publicly carrying, Plaintiffs also cannot show that they have been irreparably harmed. Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Colorado v. EPA*, 989 F.3d 874, 887 (10th Cir. 2021) ("mere possibility" of harm is insufficient). Courts deny preliminary injunctive relief where exceptions from the asserted harm

---

[4] And, to the extent that Hoffman challenges the standard or process for seeking authorization under Section 38-118(c), that dispute is clearly not ripe. Hoffman does not claim that he made *any* effort to seek authorization and was never denied it, so he cannot have a dispute about what criteria were applied.

[5] For the defense of the State of Colorado's permitting regime that Sheriff Diggins and Chief Thomas allegedly implement or enforce under the terms of and as prescribed by State law, the Denver Defendants defer to the State Defendants.

are still available. *See, e.g.*, *Wright v. National Bd. of Med. Exam'rs*, 2021 WL 5028463, at *9 n.4 (D. Colo. Oct. 15, 2021) (risk of failing licensing exams within a prescribed period did not constitute irreparable harm where plaintiff did not apply for a "good cause exception," making the asserted harm "speculative or unsubstantiated"); *SNL Workforce Freedom All. v. National Tech. & Eng'g Sols. of Sandia, LLC*, 2022 WL 2065062, at *3 (D.N.M. June 8, 2022) (no irreparable harm where plaintiffs' religious exemption request to vaccine mandate was pending); *Wyoming v. United States Dep't of the Interior*, 2017 WL 161428, at *11 (D. Wyo. Jan. 16, 2017) (no irreparable harm where party could obtain statutory exemption from natural gas regulation). That is exactly the case here: because Plaintiffs fail to show that they are prohibited from public carry by Denver law, any claimed denial of their ability to public carry—and thus any resulting alleged irreparable harm—remains entirely speculative.

### B. Plaintiffs' Delay Weighs Against A Finding Of Irreparable Harm

"[U]nreasonable delay undercuts a finding of irreparable harm." *Colorado Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025). A delay is unreasonable where it reflects a party's decision "to sit on its rights." *Id.* In *Colorado Motor Carriers*, for example, a one-year delay in seeking relief from an ordinance after its amendment weighed against a finding of irreparable harm. *Id.* For constitutional claims, too, a "delay in seeking [injunctive] relief cuts against finding irreparable injury." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1262 (D. Colo. 2022); *see also American Ass'n of People with Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008) (three-year delay "considerably undercut[]" plaintiffs' irreparable harm).

Hoffman's delay disproves any emergency. Hoffman allegedly "regularly travels to and through Denver, Colorado," Compl. ¶ 10, including to visit his son at Colorado State University "at least two or three times per year," *id.* ¶ 34; Hoffman Decl. ¶ 6. When he does, he "stay[s] with friends who live in Denver, and … spend[s] time in public areas and establishments within Denver

city and county limits." *Id.* ¶ 6. By his own account, Hoffman visits Colorado regularly and has for years. Yet not until October 2026 did he file a lawsuit. And while he allegedly plans to visit Denver again in January 2027, he does not explain why that trip necessitates the emergent relief he suddenly demands, when no prior trip did.

FPC fares no better. FPC has litigated Second Amendment cases throughout the country, appearing as a plaintiff since at least 2016 and throughout the last decade. *See, e.g.*, *Avitabile et al. v. Cuomo et al.*, No. 1:16-cv-01447 (N.D.N.Y.); *Ulises Garcia et al. v. Kamala Harris*, No. 2:16-cv-02572 (C.D.Cal.); *Hulbert et al. v. Pantelides et al.*, No. 1:16-cv-04121 (D.Md.). Its "members reside both within and outside the State of Colorado," Combs Decl. ¶ 7, and it has been a plaintiff in at least one Second Amendment case in Colorado, *see Langston v. Humphreys*, No. 2025CV31185 (Colo. Dist. Ct., Denver Cnty. Mar. 31, 2025). FPC identifies no member besides Hoffman at all, let alone one whose circumstances are an emergency. Given Colorado's longstanding tradition of regulating concealed carry, FPC's delay in challenging Colorado's state laws "suggests a manufactured urgency rather than a true threat of irreparable harm." *Colorado Union of Taxpayers, Inc. v. Griswold*, 2020 WL 6290380, at *3 (D. Colo. Oct. 27, 2020).

## III. Because Denver's Law Is Consistent With The Nation's Historical Tradition Of Firearm Regulation, Plaintiffs Fail To Show A Likelihood Of Success On The Merits

Plaintiffs do not meet their burden to demonstrate a substantial likelihood of success on the merits. The Second Amendment is not an unlimited right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). "[T]he government may still lawfully regulate firearms, as it has done for centuries." *Rocky Mountain Gun Owners*, 121 F.4th at 113.

Plaintiffs' burden is heavy at this emergency stage. Because Plaintiffs bear the burden to prove their substantial likelihood of success, they must show that Denver is unlikely to demonstrate

that its ordinance is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24; *see also National Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 229 (2d Cir. 2025) (plaintiffs at preliminary injunction stage had to "show that … Defendants cannot carry their burden of justifying the challenged statute[] by demonstrating that [it] comport[s] with the Nation's historical tradition of firearm regulation"), *cert. granted sub nom. Grant v. Higgins*, 146 S. Ct. 2811 (2026). Plaintiffs' showing must be "clear and unequivocal." *Dominion Video Satellite,* 356 F.3d at 1261. They have not met that burden.

Cities and "[s]tates [can] lawfully eliminate one kind of public carry"—open carry or concealed carry—"so long as they le[ave] open" the other option. *Bruen*, 597 U.S. at 59. Denver law eliminates neither: it permits both open and concealed carry under certain circumstances, which include by "concealed carry permit holders" under any federal, state, or local law and "with valid authorization from the city." Plaintiffs purport to challenge only a mischaracterized, caricatured version of Denver's regulation of open carry. Compl. ¶¶ 2–5; *see* D.R.M.C. § 38-118. Open-carry regulations themselves have been regularly upheld under *Bruen*, even ones without Denver's exemptions. *See, e.g.*, *Frey v. City of N.Y.,* 157 F.4th 118, 140 (2d Cir. 2025) (upholding New York State's "open carry ban" at preliminary injunction stage); *We the Patriots, Inc. v. Doyle*, 2026 WL 592093, at *6–7, *7 n.5 (D. Conn. Mar. 2, 2026) (upholding Connecticut state law prohibiting most open carry, except for certain exceptions such as hunting and firearms training); *O'Neil v. Neronha*, 2025 WL 2197313, at *3 (D.R.I. Aug. 1, 2025) (upholding Rhode Island's discretionary licensing regime for open carry, and holding plaintiffs' claims were "foreclosed by *Bruen*"); *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶¶ 5, 30–33, 39 (upholding Illinois law "proscrib[ing] the open carriage of firearms in public"), *cert. denied,* 146

S. Ct. 1815 (2026); *see also Abed v. United States*, 278 A.3d 114, 129 n.27 (D.C. 2022) ("[N]othing in [*Bruen*] implies that a State must allow open carry.").

These decisions are well-reasoned under *Bruen*. Open-carry regulations like Denver's are consistent with the "proliferat[ion]" of historical "public-carry restrictions" in the period "after the ratification of the Second Amendment in 1791," *Bruen*, 597 U.S. at 50, including those that prohibited one kind of public carry altogether. *Id*. at 53. Such regulations were common in the second half of the nineteenth century. "From 1860 to 1900, 24 states enacted anti-open carry laws, and 9 states did so in the early 1900s," and "[s]tate courts generally upheld these laws." *Frey*, 157 F.4th at 139 n.13 (quoting *Baird v. Bonta*, 709 F. Supp. 3d 1091, 1136 (E.D. Cal. 2023) (modification in original)). Meanwhile, nine states and territories restricted the concealed carry of pistols between 1813 and 1859. *Bruen*, 597 U.S. at 52 n.16 (collecting laws). This historical record led many of the decisions above to find open-carry restrictions constitutional.

Against this backdrop, Plaintiffs make no clear and unequivocal showing that they are likely to succeed in enjoining Denver's ordinance. They do not address this case law. They do not conduct *Bruen*'s required analogical reasoning. They offer no evidence or other proof at all.[6] Instead, they fight a strawman—that the result of the combined operation of Denver's and Colorado's laws is that some nonresidents "have no lawful means to carry a handgun in Denver." Compl. ¶ 4. That is not accurate. As discussed, Denver regulates but does not ban concealed carry or open carry. D.R.M.C. § 38-118(a)–(d) . Denver allows concealed carry by "concealed carry permit holders"—*i.e.*, when a "person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law"—

[6] At any hearing on the Motion, the Denver Defendants reserve the right to present evidence, including expert testimony, of the historical tradition of statutory "restrictions governing … the manner of carry." *Bruen*, 597 U.S. at 38.

and it allows either concealed or open carry under some circumstances, including "with valid authorization from the city" and when "[t]ransporting [a] weapon while travelling within a private automobile or other private means of conveyance for the purposes of hunting or the lawful protection of such person or their property, or another person or that person's property." *Id.*

Plaintiffs overlook these exceptions, including this last provision, which is consistent with the historical "traveler's exemption" providing a right to carry while traveling through a jurisdiction that Plaintiffs invoke throughout their complaint. *See, e.g.*, *Carr v. State*, 34 Ark. 448, 449 (1879) (such exceptions exist "to enable travelers to protect themselves on the highways, or in transit through populous places—not to allow them the privilege of mixing with the people in ordinary intercourse, about the streets"); *Eslava v. State*, 49 Ala. 355, 357 (1873) (traveler exception applied to "travel to a distance from home, and not within the ordinary line of the person's duties, habits, or pleasure").[7] Historical "travel exceptions did not describe the everyday movement through public spaces like town squares and commercial districts." *Kipke v. Moore*, 165 F.4th 194, 211 (4th Cir. 2026). Plaintiffs thus demand greater ability to carry than these historical statutes would have allowed.[8]

For all these reasons, Plaintiffs have not carried their high burden to show substantial likelihood of success on the merits, clearly and unequivocally, at this early stage.

---

[7] *See also, e.g.*, *Gholson v. State*, 53 Ala. 519, 521 (1875) (exceptions apply when "setting out [] on a journey" beyond "the ordinary habits, business, or duties of the person, to a distance from his home, and beyond the circle of his friends or acquaintances"); *Smith v. State*, 50 Tenn. 511, 513 (1872) (concealed carry exceptions for travelers "should not embrace a mere ramble in one's own neighborhood across the lines of contiguous counties"); *McGuirk v. State*, 64 Miss. 209, 212 (1887) ("[t]he 'traveling or setting out on a journey' intended by [Missisippi's] statute to be an excuse for carrying concealed weapons means a travel of such distance as to take one beyond the circle of his friends and acquaintances").

[8] Plaintiffs do not direct their Privileges and Immunities Clause claim at Denver law, *see* Mot. 12, nor could they: Section 38-118 treats residents and non-residents alike.

## IV. The Balance Of Equities And The Public Interest Disfavor Preliminary Relief

Finally, Plaintiffs fail to show the proposed "injunction [is] not … against the public interest" or that the alleged harm to Plaintiffs would outweigh the harm of a preliminary injunction to the Denver Defendants. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024). The only interest they assert is an unestablished constitutional harm. On the other hand, Denver has a substantial interest in regulating public carry to maintain public safety in dense urban environments and at the kinds of large, crowded public gatherings that are typical in a city. Legislatures that regulate open carry are "address[ing] the concern of others when people walking around with open carry guns intimidate others." *We the Patriots*, 2026 WL 592093, at *7.

## V. Plaintiffs' Proposed Preliminary Injunction Is Impermissibly Overbroad

Plaintiffs' motion should be denied in full, and no preliminary injunction should issue. But if it did, it must be far narrower than the broad universal injunction Plaintiffs purport to seek.

*First*, any preliminary injunction could only apply to the actual plaintiffs, Hoffman and FPC. Federal courts cannot grant injunctive relief to nonparties who have neither asked for it nor demonstrated that they are entitled to it. *See Trump v. CASA*, 606 U.S. 831, 844 (2025); *Firearms Policy Coalition v. Bondi,* 805 F. Supp. 3d 721, 733 (N.D. Tex. 2025) (enjoining gun regulation only as to associational plaintiff and its members).[9] Plaintiffs' request for an injunction as to "*all* nonresidents" of Colorado, Mot. 2, is plainly impermissible and can be summarily rejected.

*Second*, Plaintiffs fail to meet their burden of demonstrating that any of FPC's members who are not parties to this litigation are entitled to relief. Plaintiffs purport to seek an injunction "on behalf of [FPC's] members … who intend and desire … to publicly carry handguns," Combs

---

[9] FPC's own website acknowledges that under *Trump v. CASA*, a "[court] order blocking a government from enforcing" a gun control law "may apply only to named individual and FPC members." *Membership*, Firearms Policy Coalition, https://www.firearmspolicy.org/membership (last visited Nov. 11, 2026).

Decl. ¶ 8, but they offer no evidence of any members besides Hoffman who wish to publicly carry in Denver, let alone who are unable to do so. And they offer no means of discerning and verifying the identity of FPC members to determine whom an organization-wide injunction would cover.

*Third*, Plaintiffs offer no justification for enjoining the provisions of Denver law they identify. "When confronting a constitutional flaw in a statute," courts must "try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006). "Usually, only the unconstitutional applications" of a regulatory framework "will be enjoined while the other applications remain in force." *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263, 1285 (D. Utah 2015). Plaintiffs allege only the narrow problem of Hoffman's supposed individual inability to carry openly or concealed within Denver. But Denver law already permits Hoffman to concealed carry with his California permit under Section 38-118(d) and to open carry with valid authorization. Plaintiffs' proposed injunction would therefore go further than is necessary to address any alleged violation.

Dated: November 11, 2026

Respectfully submitted,

*/s/ Ryan M. Chabot*
Ryan M. Chabot
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(t) 212-230-8800
ryan.chabot@wilmerhale.com

Michiko A. Brown
Ashley Kelliher
Denver City Attorney's Office
201 W. Colfax Ave.
Denver, CO 80202
(303) 912-5813
michiko.brown@denvergov.org
ashley.kelliher@denvergov.org

*Counsel for Denver Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which served all counsel of record.

*/s/ Ryan M. Chabot*
Ryan M. Chabot

*Counsel for Denver Defendants*