**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04837-PAB

GENE HOFFMAN;
FIREARMS POLICY COALITION, INC.,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.,

Defendants.

---

# DENVER DISTRICT ATTORNEY JOHN WALSH'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 13)

---

Denver District Attorney John Walsh respectfully submits this memorandum in response to Plaintiffs' Motion for Preliminary Injunction. Pls.' Mot. for a Prelim. Inj. ("Mot."), ECF No. 13 (Oct. 7, 2026).

Colorado has a longstanding history of common-sense gun laws, designed to ensure public safety while also protecting Coloradans' Second Amendment rights. These laws include a concealed-carry reciprocity regime for out-of-state individuals seeking to carry a firearm while in Colorado. Plaintiffs now sue Denver District Attorney John Walsh ("DA Walsh") in his official capacity and ask the Court for an emergency preliminary injunction enjoining DA Walsh from enforcing and prosecuting some Colorado state law firearm regulations in Colorado's Second Judicial District.

At this emergency stage, Plaintiffs' motion for a preliminary injunction must fail. *First*, Plaintiffs lack standing. Gene Hoffman is permitted to open carry under Colorado law, and he has never applied for—and thus never been denied—a concealed-carry license in Colorado. He has

not suffered an injury in fact. Because Hoffman lacks standing, so too does the Firearms Policy Coalition. *Second*, because Colorado does not prohibit public carry, Plaintiffs fail to show they are irreparably harmed. *Third*, Plaintiffs cannot meet their heavy burden of demonstrating a likelihood of success on the merits, as there are still avenues of public carry available to them. *Finally*, the balance of equities and the public interest in maintaining the State's reciprocity regime weigh against a preliminary injunction, and even if a preliminary injunction were warranted, Plaintiffs' requested relief is overbroad.

## BACKGROUND

### I. DA Walsh, In His Capacity As Denver District Attorney, Enforces State Law

Defendant DA Walsh is not a Denver municipal officeholder; rather, he holds state elected office as the District Attorney for Colorado's Second Judicial District, which shares the same boundaries as the City & County of Denver. Because of those shared boundaries, the office and the position have long used the Denver name, i.e., "Denver District Attorney's Office," and "Denver District Attorney." In his role as Denver District Attorney, DA Walsh prosecutes violations of Colorado state criminal laws. *See, e.g.*, Colo. Rev. Stat. § 20-1-102 ("[e]very district attorney shall appear in behalf of the state and the several counties of his or her district…[t]he district attorney, when enforcing support laws pursuant to statute or contract, may use any remedy, either civil or criminal, available under the laws of this state"). Colorado district attorneys do not enforce municipal ordinances or prosecute municipal code violations. *See, e.g.*, *id.*; City & County of Denver, *City Attorney's Office, Denver*, http://denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/City-Attorneys-Office (last visited Nov. 10, 2026) (Denver city attorneys "prosecute municipal crimes").

## II. Colorado Law Regulates The Carry Of Firearms

Colorado allows open carry of firearms without a permit. *See* Colo. Rev. Stat. §§ 18-12-105 (permit required for concealed carry), 29-11.7-104 (open carry regulation left to local government). Colorado also requires a license to carry a concealed firearm within the State. Specifically, Colorado criminalizes carrying a concealed firearm, unless the individual was "in his or her own dwelling or place of business or on property owned or under his or her control at the time of the act of carrying;" was "in a private automobile or other private means of conveyance who carries a weapon for lawful protection of such person's or another's person or property while traveling;" or "at the time of carrying a concealed weapon, held a valid written permit to carry a concealed weapon." Colo. Rev. Stat. § 18-12-105(2).

In order to obtain a concealed-carry permit, an individual must be a Colorado resident, at least twenty-one years old, remain eligible to carry a firearm under state and federal law, not have committed a disqualifying act as defined by statute, and demonstrate "competence" with a handgun. Colo. Rev. Stat. § 18-12-203. Colorado also has a concealed-carry permit reciprocity regime. Specifically, for non-residents wishing to carry a concealed weapon, Colorado recognizes concealed-carry permits issued to residents of states that also recognize Colorado concealed-carry permits. Colo. Rev. Stat. § 18-12-213. Both the concealed-carry regulation for Colorado residents and the reciprocity regulation are "shall-issue" permitting regimes. Colo. Rev. Stat. §§ 18-12-203 ("[A] sheriff shall issue a permit to carry a concealed handgun to an applicant who" meets the statutory guidelines), 18-12-213 ("A permit to carry a concealed handgun or a concealed weapon that is issued by a state that recognizes the validity of permits issued pursuant to this part 2 shall be valid in this state ….").

Colorado also regulates the public carry of firearms in select sensitive locations, including "in or on the real estate and all improvements erected thereon of any licensed child care center;

public or private elementary, middle, junior high, high, or vocational school; or any public or private college, university, or seminary." Colo. Rev. Stat. § 18-12-105.5(1)(a.5); *see also* Colo. Rev. Stat. § 18-12-105.3. However, Colorado recognizes certain exceptions to this regulation, including "the person held a valid permit to carry a concealed handgun or a temporary emergency permit ... and the person is carrying the concealed handgun." Colo. Rev. Stat. § 18-12-105.5(3)(d.5).

## III. Plaintiffs Seek The Extreme Remedy Of An Immediate Injunction

Plaintiffs are California resident Gene Hoffman and firearm-advocacy organization Firearms Policy Coalition, Inc. ("FPC"). Hoffman contends that he "regularly travels to and through Denver, Colorado," Amended Complaint ("Compl.") ¶ 10, ECF No. 9 (Oct. 6, 2026), "to visit friends as well as his son, who is enrolled at Colorado State University," in Fort Collins, Colorado. *Id.* ¶ 34; Decl. of Gene Hoffman ("Hoffman Decl.") ¶ 6, ECF No. 13-1 (Oct. 7, 2026). Hoffman alleges that "[d]uring these trips, he spends time in public areas and establishments within Denver city and county limits." Compl. ¶ 34. He states he plans to return to Denver in January 2027. *Id.* Hoffman holds concealed-carry permits from California, Utah, Arizona, and Florida. *Id.* ¶ 33. He has never sought a concealed-carry permit in Colorado. *Id.* ¶ 36; Hoffman Decl. ¶ 11. FPC "brings this action on behalf of its members, including those residing in States that lack concealed-carry reciprocity with Colorado, who intend and desire to exercise their Second Amendment protected rights to publicly carry handguns for self-defense in Denver." Decl. of Brandon Combs ("Combs Decl.") ¶ 8, ECF No. 13-2 (Oct. 7, 2026).

Plaintiffs seek the extreme remedy of a preliminary injunction. Specifically, Plaintiffs' motion asks the Court to "enjoin Defendants from enforcing Colorado and Denver's unconstitutional carry regime against nonresidents, including Plaintiff Hoffman and Plaintiff

FPC's nonresident members and order Defendants to grant carry licenses to nonresidents, including Plaintiff Hoffman and Plaintiff FPC's nonresident members." Mot. at 15.

## PRELIMINARY INJUNCTION STANDARD

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party must make a "clear and unequivocal" showing, *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004), that: "(1) it is substantially likely to succeed on the merits, (2) it will suffer irreparable injury if the injunction is denied, (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest," *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021).[1] An injunction that would "alter the status quo" requires "a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 883–84.

## ARGUMENT

### I. Plaintiffs Lack Standing To Seek Their Requested Injunction Against DA Walsh

Plaintiffs "must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). To establish Article III standing, plaintiffs must demonstrate (1) "an injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a "likelihood that the injury will be redressed by a favorable decision." *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016). At the preliminary injunction stage, plaintiffs must make a "clear showing that they are likely to establish each element" and "must move beyond the mere allegations in their pleadings and provide specific

[1] Internal quotation marks, citations, and alterations are omitted from all cited sources, unless noted.

facts, supported by affidavits or other evidence, to demonstrate standing." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 108–10 (10th Cir. 2024).

### A. Hoffman Has Suffered No Injury In Fact From DA Walsh's Enforcement Of Colorado's Public Carry Regulations

Hoffman lacks standing to sue DA Walsh because he has not been injured by DA Walsh's enforcement of Colorado state laws regulating the public carry of firearms. Hoffman does not allege that DA Walsh has prosecuted him for violating Colorado firearms laws, or is otherwise enforcing those laws against him. Instead, this is a pre-enforcement challenge, for which Hoffman must show "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) "a credible threat of prosecution thereunder." *Hickenlooper*, 823 F.3d at 545 (alteration in original). But Hoffman does not show a credible threat of prosecution for carrying a firearm in DA Walsh's jurisdiction. Again, DA Walsh only enforces Colorado state law, which only prohibits concealed carry without a permit, not open carry. Under *New York State Rifle & Pistol Association Inc. v. Bruen*, one kind of public carry—open carry or concealed carry—can be unavailable as long as the other option is available. 597 U.S. 1, 59 (2022) ("States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly"). Hoffman may legally open carry under Colorado law. He faces no colorable threat that DA Walsh would prosecute him under Colorado law for doing so. Nor does Hoffman demonstrate his intent to publicly carry in school zones or other prohibited areas within DA Walsh's jurisdiction in Denver. *See* Compl. ¶¶ 34–35 (allegations regarding Colorado State University, outside DA Walsh's jurisdiction), Hoffman Decl. ¶ 9 (same). Hoffman has no imminent injury from DA Walsh, who does not enforce city ordinances.

### B. FPC Lacks Standing Because Hoffman Lacks Standing

The only harm FPC alleges is to its members. *See, e.g.*, Compl. ¶¶ 11 ("FPC brings this action on behalf of its members, including Hoffman, who are adversely and directly harmed by Defendants' enforcement of the challenged laws."), 59–60, 63, 65(b). To establish standing, FPC therefore "ha[s] to prove … that its members would otherwise have standing to sue in their own right." *Hickenlooper*, 823 F.3d at 550 (organization did not have standing where its member failed to show evidence of injury). FPC offers no evidence (or even allegations) about any other member but Hoffman being prohibited from carrying in DA Walsh's jurisdiction. *See, e.g.*, Compl. ¶ 11. Because Hoffman lacks standing, so too does FPC.

## II. Plaintiffs Fail To Justify The Extraordinary Remedy Of A Preliminary Injunction

### A. Plaintiffs Fail To Show Irreparable Harm From DA Walsh

Hoffman and FPC fail to show that DA Walsh has prohibited them or their members from publicly carrying a firearm under Colorado law within Denver. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Plaintiffs must show that "irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Colorado v. EPA*, 989 F.3d 874, 887 (10th Cir. 2021) ("mere possibility" of harm is insufficient). As discussed, the Colorado law that DA Walsh enforces allows for open carry of firearms. *See supra* at 3. Plaintiffs have not shown a "certain, great, actual" risk that DA Walsh would prosecute them or their members for doing what Colorado law authorizes. So DA Walsh has not even arguably caused the supposedly "irreparable" harm to their Second Amendment rights that Plaintiffs allege.

### B. Plaintiffs' Delay Weighs Against A Finding Of Irreparable Harm

"[U]nreasonable delay undercuts a finding of irreparable harm." *Colorado Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025). A delay is unreasonable where it reflects a party's decision "to sit on its rights." *Id.* In *Colorado Motor Carriers*, for example, a one-year delay in seeking relief from an ordinance after its amendment weighed against finding irreparable harm. *Id.* For constitutional claims, too, a "delay in seeking [injunctive] relief cuts against finding irreparable injury." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1262 (D. Colo. 2022) (alteration in original); *see also American Ass'n of People with Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008) (three-year delay "considerably undercut[]" plaintiffs' irreparable harm).

Hoffman's delay disproves any emergency. Hoffman allegedly "regularly travels to and through Denver, Colorado," Compl. ¶ 10, including to visit his son at Colorado State University "at least two or three times per year," *id.* ¶ 34; Hoffman Decl. ¶ 6. When he does, he "stay[s] with friends who live in Denver, and … spend[s] time in public areas and establishments within Denver city and county limits." Hoffman Decl. ¶ 6. By his own account, Hoffman visits Colorado regularly and has for years. Yet not until October 2026 did he file a lawsuit. And while he allegedly plans to visit Denver again in January 2027, he does not explain why that trip necessitates the emergent relief he suddenly demands, when no prior trip did.

FPC fares no better. FPC has a long history of Second Amendment litigation throughout the country, appearing as a plaintiff since at least 2016 and throughout the last decade. *See, e.g.*, *Avitabile et al. v. Cuomo et al.*, No. 1:16-cv-01447 (N.D.N.Y.); *Ulises Garcia et al. v. Kamala Harris*, No. 2:16-cv-02572 (C.D.Cal.); *Hulbert et al. v. Pantelides et al.*, No. 1:16-cv-04121 (D.Md.). Its "members reside both within and outside the State of Colorado," Combs Decl. ¶ 7, and has been a plaintiff in at least one Second Amendment case in Colorado, *see Langston v.*

*Humphreys*, No. 2025CV31185 (Colo. Dist. Ct., Denver Cnty. Mar. 31, 2025). FPC identifies no member besides Hoffman at all, let alone one whose circumstances are an emergency. Given Colorado's longstanding tradition of regulating concealed carry, FPC's delay in challenging Colorado's state laws "suggests a manufactured urgency rather than a true threat of irreparable harm." *Colorado Union of Taxpayers, Inc. v. Griswold*, 2020 WL 6290380, at *3 (D. Colo. Oct. 27, 2020).

## III. Plaintiffs Fail To Show A Likelihood Of Success On The Merits

### A. Plaintiffs Have Not Established Likelihood Of Success Of A Second Amendment Claim Against DA Walsh

Plaintiffs have not met their burden to show they will likely succeed on their Second Amendment claim against DA Walsh. Again, DA Walsh prosecutes people who violate Colorado law, which does not prohibit the public carry of firearms. It prohibits concealed carry without a permit but allows open carry with no permit. Plaintiffs complain that "Defendants have no interest in denying nonresidents the ability to carry a handgun publicly," Mot. at 14, but the Colorado law whose violations DA Walsh prosecutes does not deny nonresidents that ability. Plaintiffs have not shown that the law DA Walsh enforces likely violates the Second Amendment.

The Second Amendment does not bestow an unlimited right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). "[T]he government may still lawfully regulate firearms, as it has done for centuries." *Rocky Mountain Gun Owners*, 121 F.4th at 113. To carry their burden at this preliminary injunction stage, Plaintiffs must "show that … Defendants cannot carry their burden of justifying the challenged statute[] by demonstrating that [it] comport[s] with the Nation's historical tradition of firearm regulation." *National Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 229 (2d Cir. 2025), *cert. granted sub nom. Grant v. Higgins*, 146

S. Ct. 2811 (2026). Plaintiffs' showing must be "clear and unequivocal." *Dominion Video Satellite*, 356 F.3d at 1261. They have not made such a showing.

In *Bruen*, the Supreme Court held that "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Bruen*, 597 U.S. at 59. Concealed-carry regulations are consistent with the "proliferat[ion]" of historical "public-carry restrictions" in the period "after the ratification of the Second Amendment in 1791," *Bruen*, 597 U.S. at 50, including those that prohibited one kind of public carry altogether. *Id.* at 53; *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013) ("There can be little doubt that bans on the concealed carrying of firearms are longstanding."). *Bruen* recognized that "the majority of the 19th-century courts … held that these prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." 597 U.S. at 52 (quoting *Heller*, 554 U.S. at 626). Further, several states and territories restricted the concealed carry of pistols between 1813 and 1859. *Id.* at 52 n.16 (collecting laws); *see also id.* at 53 & n.19 (Louisiana laws allowed restriction of concealed carry while allowing open carry), 54 (discussing review of 19th-century Georgia law that permissibly "prohibited carrying certain weapons *secretly*" where open carry was not also banned).

By regulating concealed carry through a permitting process, but allowing open carry, the Colorado firearms regulations that DA Walsh enforces mirror what the Supreme Court found to be presumptively constitutional. *See Bruen*, 597 U.S. at 38 n.9 ("To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit."). Colorado does not prohibit the open carry of firearms. *See* Colo. Rev. Stat. § 29-11.7-104. And restrictions on concealed carry have been consistently upheld, even after *Bruen*. *See, e.g.*,

*Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 176 (2d Cir. 2025) (finding plaintiffs unlikely to succeed on the merits of challenging constitutionality of licensing requirements in New York's Concealed Carry Improvement Act); *Haubenreiser v. City & Cnty. of Denver*, 2026 WL 787734, at *12 (D. Colo. Feb. 24, 2026) (citing *Peterson* and finding "the Second Amendment does not provide a right to carry a concealed firearm"), *report and recommendation adopted*, 2026 WL 777165 (D. Colo. Mar. 19, 2026); *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222 (4th Cir. 2024) ("[W]e hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework."), *cert. denied*, 145 S. Ct. 1049 (2025); *Yukutake v. Lopez*, 2026 WL 2834831, at *6 (9th Cir. Sept. 22, 2026) ("[D]espite a wide range of methodological approaches to assessing shall-issue regulations, the circuit courts have converged on one unifying principle: non-abusive, shall-issue laws comport with the Second Amendment."); *see also Rocky Mountain Gun Owners*, 121 F.4th at 119 (finding that *Bruen* recognized that prohibitions on carrying concealed weapons and shall-issue licensing regimes were presumptively lawful). Altogether, Plaintiffs do not make a clear and unequivocal showing that they are likely to succeed on their Second Amendment claim against DA Walsh.

### B. Plaintiffs Have Not Proved That They Are Likely To Succeed On Their Privileges And Immunities Clause Claim Against DA Walsh

Plaintiffs also do not show a likelihood of success on their Privileges and Immunities claim. This claim is entirely derivative of their Second Amendment claim: They contend that denying them Second Amendment privileges because they are nonresidents violates the Privileges and Immunities Clause. *See* Mot. at 12–14. Because Plaintiffs have not proved that their Second Amendment claim against DA Walsh is likely to succeed, *see supra*, this claim is not likely to succeed either.

Moreover, Tenth Circuit precedent forecloses this claim. The Tenth Circuit has held that concealed carry is not protected by the Privileges and Immunities Clause. *E.g.*, *Peterson*, 707 F.3d at 1215–16 ("[W]e conclude that carrying a concealed weapon is not a privilege or immunity protected under Article IV."). Other courts have similarly found that state reciprocity requirements do not violate the Privileges and Immunities Clause. *See, e.g.*, *Culp v. Raoul*, 921 F.3d 646, 656–58 (7th Cir. 2019) (concealed carry reciprocity requirements do not violate the Privileges and Immunities Clause). Given this Tenth Circuit precedent and other caselaw, Plaintiffs do not show a clear and unequivocal likelihood of success on their Privileges and Immunities Clause claim.

## IV. The Balance Of Equities And The Public Interest Disfavor Preliminary Relief

Denying Plaintiffs' emergency injunctive relief would also favor the balance of the equities and benefit the public interest. Plaintiffs make little effort to satisfy these requirements. Their only argument is a single sentence that summarily contends that "it is always in the public interest to prevent the violation of a party's constitutional rights," Mot. at 15 (quoting *Ortega v. Grisham*, 148 F.4th 1134, 1154 n.13 (10th Cir. 2025)), and such "violation" prevails over any harm to the public.

This is insufficient. For one, DA Walsh has not violated Plaintiffs' constitutional rights. Again, DA Walsh prosecutes violations of Colorado state laws prohibiting concealed carry without a permit, but which allow open public carry. Since Plaintiffs' only argument on the equities and public interest rests on their alleged constitutional claim against DA Walsh, which they have not proved likely to succeed, these prongs fail too. For another, their single-sentence approach makes no effort to address the equities of and public interest in DA Walsh's continuing to enforce Colorado state law. The public has an interest in its officials enforcing its laws. That includes the people of Denver, who have an interest in the District Attorney enforcing applicable State requirements and prohibitions. *See, e.g.*, *Planned Parenthood of Greater Tex. Surgical Health*

*Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."). But Plaintiffs fail to show the proposed "injunction [is] not … against the public interest." *Rocky Mountain Gun Owners*, 121 F.4th at 128. Plaintiffs entirely default on their obligation to prove, clearly and unequivocally, that their interests outweigh that public interest.

## V. Plaintiffs' Proposed Preliminary Injunction Is Impermissibly Overbroad

The Court should not issue a preliminary injunction against DA Walsh at all, but if it did, it could only be far narrower than what Plaintiffs seek. DA Walsh could only be preliminarily enjoined against enforcing Colorado law against Hoffman alone. Federal courts cannot grant injunctive relief to nonparties who have neither asked for it nor demonstrated that they are entitled to it, so Hoffman and FPC can only even seek injunctive relief for themselves. *See Trump v. CASA*, 606 U.S. 831, 844 (2025); *Firearms Policy Coalition v. Bondi*, 805 F. Supp. 3d 721, 733 (N.D. Tex. 2025) (enjoining gun regulation only as to associational plaintiff and its members). FPC, however, has provided no evidence about any non-party members of the organization. Conclusory and nonspecific statements that "certain of Plaintiff FPC's members[] are nonresidents of Colorado who desire to lawfully carry a handgun while in Colorado" do not prove any FPC member's entitlement to the extreme remedy of a preliminary injunction. Compl. ¶ 63; *see also* Combs Decl. ¶ 8. For any preliminary injunctive relief for Hoffman, "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Uber Techs., Inc. v. Moss*, 2025 WL 1420940, at *2 (D. Colo. Jan. 31, 2025) (quoting *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024)) (alteration in original); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006) ("When confronting a constitutional flaw in a statute," courts must "try to limit the solution to the problem."). At most, then, Plaintiffs could obtain an order preliminarily enjoining DA Walsh from prosecuting Hoffman for violating

Colorado state law while in the DA's jurisdiction. *See, e.g.*, *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263, 1285–86 (D. Utah 2015) (severing and invalidating only one provision of the statute alleged to be unconstitutional); *AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266, 1282 (W.D. Okla. 2025) (similar).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

DATED: November 11, 2026

Respectfully submitted,

*/s/ Ryan M. Chabot*

Ryan M. Chabot
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(t) 212-230-8800
ryan.chabot@wilmerhale.com

*Counsel for Denver District Attorney John Walsh*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which served all counsel of record.

*/s/ Ryan M. Chabot*

Ryan M. Chabot

*Counsel for Denver District Attorney John Walsh*